IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STROHL SYSTEMS GROUP, INC., and | : | CIVIL ACTION |
| MYLES L. STROHL | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM FALLON | : | No. 05-CV-0822 |

DITTER, S.J.                                                  December 11, 2007

<u>MEMORANDUM AND ORDER</u>

In this case, I granted summary judgment against the defendant, a shareholder, for having

violated the confidentiality agreement he had made with his former corporate employer.  Under a

liquidated damages provision of that agreement, William Fallon was required to sell his shares of

stock back to the corporation.  I referred the matter to Magistrate Judge David R. Strawbridge to

consider the date and method of evaluating the stock, the question of attorneys' fees, and other

equitable relief to which plaintiffs might be entitled.  Before me now are exceptions filed by both

parties to Judge Strawbridge's report and recommendation.

1.  <u>Plaintiffs' objection</u>

Plaintiffs object to Judge Strawbridge's determination that plaintiffs are not entitled to

recover profit distributions made by the company to Fallon following his refusal to return his

stock after his breach of the confidentiality provision of the investment agreement.  The

contractual remedy for that breach was a liquidated damages clause that provided for the buy-

back of company shares at 50 per cent of their appraised value.  Plaintiffs argue that Fallon

should not be able to retain distributions he received since February 22, 2005, the date the

plaintiffs sought to enforce the buy-back provision of the investment agreement.

Recognizing that the only reason Fallon received these payments was because he refused to comply with the buy-back provision, Judge Strawbridge nevertheless concluded that the company benefitted from Fallon's continued capital in the company and that plaintiffs had failed to demonstrate that the dividends were damages that reasonably flowed from Fallon's breach. Finding no contractual, legal, or equitable basis to order disgorgement of these funds, Judge Strawbridge recommended against it.  I agree.

Under Pennsylvania law, a party that has a legally enforceable claim for liquidated damages is barred from seeking additional money damages.  *Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.,* 246 F. Supp. 2d 394, 400 (E.D. Pa. 2002).  In this case, the liquidated damages provision only requires that the defendant return his stock to the company for one-half its value; there is nothing about the suspension of dividends until the stock is surrendered.  I find that it was not beyond the possible realization of the plaintiffs that enforcement of the buy-back provision would be litigated and take some time to resolve.  The plaintiffs could have insisted upon a provision to freeze the payment of dividends during this period if that was their intention.  Obviously, they did not do so.

Unless it specifically excludes them, an agreement for liquidated damages will not bar equitable remedies or the recovery of counsel fees.  Here, the liquidated damages clause only pertains to the amount of money the defendant is to receive for the return of his stock; it does not preclude the granting of other relief which the plaintiffs request.[1]

---

[1] It might be argued that although the contract makes no provision for the freezing of dividend payments, my equitable powers would permit an order requiring their return.  I have considered the matter and conclude that so far as Fallon's stock ownership is concerned, I cannot expand the liquidated damages provision of the parties' agreement.

2.  Defendant's objections

_____Plaintiffs seek an injunction that would require Fallon to return all confidential materials he took from the company, to preclude his disclosing confidential information concerning the company in the future, and further equitable relief.  In addition, they seek counsel fees.  Judge Strawbridge recommended such an injunction and after a careful, studious examination of the fee request, recommended an award.

Fallon contends that 1) he has no obligation to return the company's confidential documents; and 2) that the award of attorney's fees is unreasonable.  There is no merit to his objections.

While I approve of what Judge Strawbridge recommends, I shall go one step further.  Plaintiffs' complaint asks for "such other and further relief as the Court deems just and proper."  As I will explain, Fallon professes difficulty in knowing what "confidential" means and therefore exactly what materials plaintiffs want and what Judge Strawbridge says should be returned.  I shall solve his problem by ordering him to return all of the company's materials.

a.  Return of company materials

For reasons that hover between the vacuous and fallacious, Fallon asserts he is under no obligation, contractual or equitable, to return the company's confidential materials.  Specifically, he contends:

1) his contract with the company did not provide for the return of these materials;

2) plaintiffs only requested their return on one occasion;

3) plaintiffs have failed to identify with specificity what he turned over to Albert Taylor;

4) the contract does not define the term "confidential;"

3

5) plaintiffs have shown no irreparable harm; and

6) the material is too old to be of any use to the company.

None requires much comment, but nonetheless, I shall deal with each separately:

First:  While it is true that the contract between the parties does not provide for a return of the confidential materials that Fallon retains, it is equally true that a court can provide relief that accords with the equities.  I concluded that Fallon improperly disclosed the confidential material in his possession with the intent to harm the company.  As Judge Strawbridge found, plaintiffs' request for injunctive relief clearly sought the return of all confidential materials that Fallon retained after his employment with the company had ended.  A simple review of the requests for relief set forth in the complaint confirms this finding.  *See Comp.* at ¶31(e).  Ordering their return is well within my equitable powers and is not dependent upon a finding that the contract deals with a misuse of information with the intention to harm the company.

Second:  Fallon claims that the company is not entitled to the return of its materials because it has made no demand upon him since he was deposed in 2003.  That was not the first request.  Myles Strohl testified that he personally asked Fallon to return all confidential material when Fallon was terminated.  *See Strohl Dep.* 45-46*, Sept.1, 2005*.  Fallon failed to comply. The logic that leads to non-entitlement from a failure to repeat a request that had been ignored  is one that escapes me.  One thing is clear, however: the plaintiffs wanted the material returned badly enough to bring this suit.

Third:  It is true that Myles Strohl was unable to state with specificity just what Fallon had turned over to Albert Taylor.  Since he was not present, just how he would know is not

4

suggested and does not occur to me.[2]

Fourth:  Fallon contends he does not know what he should have to return to the company in  the absence of a definition of confidential in the contract.  The contract requires that he keep confidential "all information, data, customer lists, intellectual property and similar items and materials . . . of the Corporation."  Bearing in mind that the order to return the company's materials is based upon my equitable powers and not the parties' contract, since these words from the contract provide insufficient guidance to Fallon, there is a short answer to his dilemma: Return everything – every scrap, jot, and tittle – return every paper, tape, disk, CD, memo, note, chart, code, and index he presently retains.  To a greater or lesser degree, so far as one who no longer has any connection to a company is concerned, all of its material is confidential.  Let the obvious supply the unfathomable which grips Fallon.

Fifth:  Fallon's assertion that he should not be required to return the company's material because it has not established any irreparable harm from his keeping it suggests a new doctrine for the law:  He who takes your shirt may keep it unless you prove an absolute dearth of shirt makers.  The requirement of irreparable harm concerns the consequences of wrongs as yet not done not with provable harm from wrong already perpetrated.  Switching metaphors:  once the rock is dropped into the pond, there is no telling how far the ripples will go or how they can be stopped.  And so it is here:  there is no way to know what harm, damage, or monetary loss may have resulted from the release of the company's confidential information to Albert Taylor or what the potential may be by reason of what may be lurking in someone's file somewhere, given

---

[2] In my younger days I was apt to listen to a radio show called *Fibber McGee and Molly.*  When some assertion was questioned, it would be in the form of a query, "Was you dere, Charlie?"  Fallon was there.  Strohl wasn't.

Albert Taylor's propensity for sharing.[3]  The best that can be done at this point is to have the confidential materials returned to the company.

Sixth:  Fallon's contention that the material is so old that it will be of no use to the company and therefore he should not have to return it is like arguing that the horse doesn't need two saddles when the real question is whether the horse needs a saddle at all.  Plaintiffs do not contend that the company needs the information or that the company lacks everything Fallon took.  The company's need is not for it to have its data -- its want is for Fallon to have it no longer.  Moreover, it burdens Fallon little to return not only that which he should have kept confidential in the first place but any other material of the company that he retains.

Considering my prior finding that Fallon had breached his agreement to keep company information confidential and my order of reference, Judge Strawbridge properly determined that any legal remedy for a further breach would be inadequate and that there remained a potential for irreparable harm if Fallon was not enjoined from future disclosure of confidential information. Judge Strawbridge also correctly found that the grant of injunctive relief would cause no harm to Fallon and that Fallon no longer had any legitimate reason for continuing to possess any confidential information he received by virtue of his employment and/or investor relationship with the company.  Thus, the grant of injunctive relief requiring the return of the company's confidential materials is appropriate.  Beyond that, since Fallon professes not to know what is confidential and what is not confidential, and bearing in mind his misuse of the materials

---

[3] As I noted in my memorandum granting summary judgment, Fallon's disclosure of confidential information to Albert Taylor adversely affected the company's bargaining position with the heirs of Martin Taylor's estate and resulted in information being handed to a variety of government officials, including the Federal Bureau of Investigation, the Internal Revenue Service, and the New Jersey state police.  At some point, the shareholders were notified of the IRS's interest in the company.

entrusted to him, I conclude it is quite within my equitable powers to order him to return

everything to the company and I shall do so.

      b. <u>Reasonable attorneys' fees</u>

      Fallon also objects to Judge Strawbridge's recommendation on attorneys' fees.  Fallon

does not challenge the appropriateness of an award of attorneys' fees but he contends that: 1) the

time expended by defense counsel on the litigation is unreasonable; 2) the report fails to

adequately reduce the hourly rates of counsel; 3) the affidavit in support of the fees is inadequate;

and 4) undue consideration was given to irrelevant or inaccurate considerations.  Again, I

disagree.

      In making this assessment, Magistrate Judge Strawbridge was mindful of the factors the

Supreme Court of Pennsylvania has determined are relevant, including:

> the amount and character of the services rendered; the labor, time
> and trouble involved; the character and importance of the
> litigation; the amount of money or value of property affected; the
> professional skill and experience called for; the standing of the
> attorney in his profession; and the pecuniary benefit derived from
> the success.

*See Report and Recommendation,* Mar. 23, 2007, at 8 (quoting *Nationwide Energy Corp. v.*

*Kleiser*, No. 84-3517, 1987 WL 10655, *2-3 (E.D. Pa. May 7, 1987).  Judge Strawbridge further

acknowledged that the burden of establishing the reasonableness of the fee request was on

plaintiffs and that the court was responsible for deciding whether the hours were reasonably

expended for the purposes described and was to exclude fees that were excessive, redundant, or

otherwise excessive.  *Id.* at 9.  Finally, Magistrate Judge Strawbridge cautioned that the court

may not decrease a fee based on factors not raised by Fallon.  *Id.*

7

Counsel for plaintiffs submitted evidence of the hours worked and the rates charged by filing a fee petition with two affidavits by Stephen J. Kastenberg, Esquire, lead counsel, and three sets of exhibits for an amount in excess of $400,000.  Judge Strawbridge reviewed the petition for adequate detail.  He found certain entries were too vague and deemed them not recoverable, resulting in a $1,210.00 reduction.

Next, the reasonableness of the hourly rate charged by each individual who worked on this litigation was considered.  Fallon's request that the Community Legal Services ("CLS") fee schedule be applied was rejected in favor of using the National Law Journal ("NLJ") fee survey. Judge Strawbridge determined that the NLJ fee survey better served the purpose of assessing the skills, experience, and reputation of counsel.  As a result, the rates charged by the partners[4] who worked on this case were accepted and the rates charged by associates Flitter, Leckerman, Kweon, and Anthony were reduced.  The rates charged for legal assistants were also reduced because plaintiffs did not submit evidence to establish the reasonableness of the rates charged. No recovery was permitted for work performed by library personnel.

Judge Strawbridge also reviewed the number of hours billed for reasonableness.  On this issue, Fallon made a general claim for a two-thirds reduction in hours.  Fallon contends that the 1,173.4 hours billed must be found to be excessive when compared to the *estimated* 287.80 hours his firm spent on this litigation.  As with many of his assertions throughout the course of this litigation, Fallon's proof falls far short of establishing his claims.  Thus, Judge Strawbridge properly declined to accept Fallon's general assertion that the time defense counsel spent on this

---

[4] The partners are R.P. Krauss, Esquire, W.L. Kotzen, Esquire, S.J. Kastenberg, Esquire, and S.P. Towers, Esquire.

case was excessive.  *See Bell v. United Princeton Properties*, 884 F.2d 713, 720 (3d Cir. 1989) (objection must identify the type of work being challenged and grounds for contending the hours claimed are unreasonable).

Nevertheless, Judge Strawbridge also conducted an independent review of the case and concluded that the "significant expenditure of attorney time by Ballard was reasonable given the objectives of the litigation and the manner of its handling."  *See Report and Recommendation,* at 18.  This is particularly true where, as here, counsel for the objecting party can only provide an estimate of the time he spent on the case, albeit, a "good faith determination of the hours."  *See Halberstadt Cert.*, ¶¶ 6,7.  Such general objections are not sufficient cause to reduce counsel fees.

After my own review of the matter, I agree with Judge Strawbridge's conclusion that it was primarily defendant's conduct in this case that affected the number of hours counsel for the plaintiffs were required to expend.  I find that it is contradictory for Fallon to contest every stage of these proceedings from mast to keel and then complain that plaintiffs were over-zealous in defending their claims.  Although it was his right to contest every aspect of plaintiffs' allegations, Fallon must also accept the consequences of diaphanous challenges.

Throughout this litigation, Fallon has caused the plaintiffs to respond to frivolous pleadings (i.e., motion for sanctions), re-litigate issues already decided against Fallon (i.e., confidentiality of disclosed materials), and respond to prematurely raised appellate claims. Fallon's ability to raise such claims in less time (by his estimate) than it took the plaintiffs to respond does not establish that the time plaintiffs spent was excessive.  Competent counsel must research and thoughtfully consider even a seemingly meritless claim and even if it is being raised

for the third time in a different context.  Thus, I find that Judge Strawbridge's recommended method for assessing the award of counsel fees to the plaintiffs is reasonable and it is approved.

Having found that the objections raised by the parties are without merit, I shall approve and adopt the thorough and well-reasoned Report and Recommendation issued by Judge Strawbridge but add the further requirement that Fallon return all of the company's materials, confidential or not.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STROHL SYSTEMS GROUP, INC., and     :     CIVIL ACTION
MYLES L. STROHL                     :
                                    :
                    v.              :
                                    :
WILLIAM FALLON                      :     No. 05-CV-0822

## <u>O R D E R</u>

AND NOW, this         day of December, 2007, upon consideration of the objections of

plaintiffs and defendant to the Report and Recommendation of United States Magistrate Judge

David A. Strawbridge, dated March 23, 2007, and the responses thereto, IT IS HEREBY

ORDERED that:

1.  The Report and Recommendation is APPROVED AND ADOPTED.

2.  The objections of the plaintiffs and defendant are OVERRULED.

3.  Defendant shall return any and all company documents in his possession or control to

the company within ten (10) days of this order.

4.  Plaintiffs shall provide defendant with a recalculation of fees consistent with Judge

Strawbridge's recommendation including any fees incurred to date.  Counsel for plaintiffs shall

provide me with a proposed order setting the award of counsel fees within twenty (20) days of

this order.  Counsel for defendant shall have ten (10) days to respond.


BY THE COURT:


/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR. S.J.